1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

10

EASTERN DISTRICT OF CALIFORNIA

11
12

CLAUDELL EARL MARTIN,

Case No.  1:10-cv-0156-LJO-MJS (PC)

Plaintiff,

**FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

13
14

v.

M. D. LOADHOLT, et al.,

**(ECF No. 61)**

15
16

Defendant.

**FOURTEEN DAY OBJECTION DEADLINE**

17
18

**I.      PROCEDURAL HISTORY**

19
20

Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to

21

42 U.S.C. § 1983. (ECF Nos. 1, 19, 24.) This matter proceeds against Defendant

22

Loadholt on Plaintiff's First Amendment retaliation claim. (ECF No. 31.)

23

On July 10, 2014, Defendant filed a motion for summary judgment. (ECF No. 61-

24

2.) Plaintiff filed an opposition (ECF No. 66) and a response to Defendant's statement of

25

undisputed material facts. (ECF No. 67). Defendant filed a reply on October 28, 2014

26

(ECF No. 72.)

27
28

1  **II.    LEGAL STANDARD**

2      Any party may move for summary judgment, and the Court shall grant summary

3  judgment if the movant shows that there is no genuine dispute as to any material fact

4  and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Wash.</u>

5  <u>Mut. Inc. v. United States</u>, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

6

7  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

8  particular parts of materials in the record, including but not limited to depositions,

9  documents, declarations, or discovery; or (2) showing that the materials cited do not

10  establish the presence or absence of a genuine dispute or that the opposing party

11  cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1). The

12

13  Court may consider other materials in the record not cited to by the parties, but it is not

14  required to do so. Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>,

15  237 F.3d 1026, 1031 (9th Cir. 2001).

16      Plaintiff bears the burden of proof at trial, and to prevail on summary judgment,

17  he must affirmatively demonstrate that no reasonable trier of fact could find other than

18  for him. <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).

19

20  Defendants do not bear the burden of proof at trial and, in moving for summary

21  judgment, they need only prove an absence of evidence to support Plaintiff's case. <u>In re</u>

22  <u>Oracle Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010).

23      In judging the evidence at the summary judgment stage, the Court may not make

24  credibility determinations or weigh conflicting evidence, <u>Soremekun</u>, 509 F.3d at 984,

25  and it must draw all inferences in the light most favorable to the nonmoving party and

26

27  determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite</u>

28  <u>de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th

Cir. 2011).  However, "conclusory, speculative testimony in affidavits and moving

papers is insufficient to raise genuine issues of fact and defeat summary judgment."

Angle v. Miller, 673 F.3d 1122, 1134 n.6 (9th Cir. 2012) (citing Soremekun, 509 F.3d at

984).

**III.    FACTUAL SUMMARY**

Based upon review and analysis of the parties' respective briefings, the Court

concludes that there is no substantial dispute as to any of the following facts**:**[1]

Plaintiff, who is incarcerated at CSP Corcoran, has a history of myocardial

infarction with stent placement and receives chronic care for cholesterol management,

hypertension, dyslipidemia, and coronary artery disease. (ECF No. 67, at 2).

Defendant Loadholt is a Family Nurse Practitioner (FNP) at CSP Corcoran. (ECF

No. 67, at 2.)

On February 25, 2008, shortly after Martin was transferred to Corcoran, updated

prescriptions were ordered for his various conditions.  Defendant Loadholt was not the

health care provider who updated the prescriptions. The new order changed the

cholesterol drug Plaintiff was taking from Lipitor to Simvastatin. The medications were to

be given to Plaintiff to self-administer.  (ECF No. 67, at 3-4.)

Plaintiff had an appointment with Defendant Loadholt on May 5, 2008. (ECF No.

67, at 4.)

At this appointment, Plaintiff expressed dissatisfaction with the fact that he was

not notified of the cholesterol medication change before it was made. He walked out of

the clinic before the appointment ended. (ECF No. 67, at 5.)

---

[1] Plaintiff refrains from admitting the truthfulness of many of the entries in medical records relied upon by Defendant in this motion. However, except as otherwise discussed herein, he provides no basis, other than general suspicions that they may have been doctored, for disputing their accuracy.

1
2
3
4
5
6
7
8
9

That same day, Defendant Loadholt changed the method by which Plaintiff was administered his cholesterol medication. Rather than authorizing him to keep it on his person (KOP) and self-administer,  Loadholt directed that for the ensuing three months Plaintiff would have  to go to the pill window where he could be observed taking the medicine ("directly observed therapy" or DOT). (ECF No. 66, at 27). Medications are administered by DOT "when a patient's statements or behavior indicate they [sic] will not comply with the instructions for taking medications as prescribed." (ECF No. 67, at 7.)

10
11
12

On May 6, Plaintiff filed a grievance alleging that Defendant Loadholt had acted unprofessionally. (ECF No. 67, at 7.)

13
14
15

On May 20, 2008 Plaintiff withdrew his grievance and appeal after speaking with Dr. Ulit regarding the medication change, because he thought Dr. Ulit would "restore his medications back to KOP." (ECF No. 67, at 9).

16
17
18

On June 2, 2008, Plaintiff saw Defendant Loadholt again for a follow-up appointment.  At this visit, Loadholt directly informed Plaintiff that he had to pick up his cholesterol medication at the pill window. (ECF No. 67, at 11.)

19
20
21
22
23
24

On August 24, 2008, Plaintiff filed a second grievance because he was still not getting his cholesterol medication with his other medications. This appeal was granted at the second level on October 2, 2008. There it was determined that Plaintiff's order of Simvastatin was authorized KOP, and that he "[would] not be required to acquire this medication through the medication line." (ECF No. 67, at 12-13).

25
26
27
28

1    **IV.    ANALYSIS**

2         **A.    Legal Standard – First Amendment Retaliation**

3         In the prison context, a First Amendment retaliation claim has five elements: first,

4    that the plaintiff engaged in conduct protected by the First Amendment; second, that the

5    defendant took adverse action against the plaintiff; third, that there is a causal

6    connection between the protected conduct and the adverse action; fourth, that the

7    adverse action either chilled the plaintiff's protected conduct or "would chill or silence a

8    person of ordinary firmness from future First Amendment activities;"[2] and fifth, that the

9    defendant's retaliatory action did not advance legitimate correctional goals. Watison v.

10   Carter, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); accord Rhodes v. Robinson, 408

11   F.3d 559, 567-568 (9th Cir. 2005).

12        The first element can be satisfied by various activities. Filing a grievance is a

13
     protected action under the First Amendment.  Watison, 668 F.3d at 1114;
14

15   Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). Pursuing a civil rights

16   legal action is similarly protected under the First Amendment. Rizzo v. Dawson, 778

17   F.2d 527, 532 (9th Cir. 1985).

18

19

20

21   ───────────────────
     [2] The second and fourth elements are so closely related as to be interchangeable, particularly here where
22   Plaintiff is not alleging that his *own* First Amendment activity was chilled (he is, after all, filing suit in
     federal court), but that the defendant's retaliatory conduct would chill a person of ordinary firmness.  For
23   such a plaintiff, an allegation that he or she suffered harm suffices, "since harm that is more than minimal
     will almost always have a chilling effect.  Alleging harm *and* alleging the chilling effect would seem under
24   the circumstances to be no more than a nicety." Rhodes, 308 F.3d 559, 567 n.11; accord Watison, 668
     F.3d at 1114. Other circuits have similarly linked the two prongs.  Noting that "it would trivialize the First
25   Amendment to hold that harassment for exercising the right of free speech was always actionable, no
     matter how unlikely to deter a person of ordinary firmness from that exercise," the Fifth Circuit found that
26   a person of ordinary firmness would not cease protected activities except in the face of harm that was
     more than *de minimis*, and thus that only such harm could be considered sufficiently "adverse" to support
27   a retaliation claim.  Morris v. Powell, 449 F.3d 682, 685-686 (5th Cir. 2006)(citing Bart v. Telford, 677 F.2d
     622, 625 (7th Cir. 1982)); accord Walker v. Bowersox, 526 F.3d 1186, 1198 (8th Cir. 2008)(finding that
28   defendant's substitution of an alternative meal for plaintiff's special tray, "although purportedly retaliatory,"
     was not sufficiently grave to constitute adverse action); Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir.
     1996)(vacated on other grounds, 523 U.S. 574 (1998)).

The adverse action necessary to satisfy the second element need not be so serious as to amount to a constitutional violation.  Watison, 668 F.3d at 1114; Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997). However, "insignificant retaliatory acts" are generally not actionable.  Morris v. Powell, 449 F.3d 682, 685 (5th Cir. 2006); accord Walker v. Bowersox, 526 F.3d 1186, 1190 (8th Cir. 2008); see also, e.g, Ransom v. Aguirre, No. 1:12cv01343 2013 WL 398903, at *4 (E.D. Cal. Jan. 31, 2013)(noting that "not every allegedly adverse action is sufficient" to support a retaliation claim).  The plaintiff must show that the harm he suffered was more than minimal, at least where he alleges that the adverse action would chill a person of ordinary firmness. See Brodheim v. Cry, 584 F.3d 1262, 127 (9th Cir. 2009); Rhodes v. Robinson, 408 F.3d at 567 n. 11.

To satisfy the third element, the plaintiff "must allege a causal connection between the adverse action and the protected conduct," Watison, 668 F. 3d at 1114, and demonstrate "that his protected conduct was 'the substantial or motivating factor behind the defendant's conduct.'" Brodheim, 584 F.3d 1271 (9th Cir. 2009)(citing Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Because it can be difficult to present direct evidence of a defendant's motive, "timing can properly be considered as circumstantial evidence of retaliatory intent." Watison, 668 F.3d at 1114 (citing Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995)).  However, timing may also undermine a claim of retaliation, for instance, when the alleged retaliatory conduct takes place before the Plaintiff's exercise of his First Amendment rights. See Pratt, 65 F.3d at 808 (television interview, at which Plaintiff expressed his negative views of the FBI, took place after alleged retaliatory transfer).

Fourth, the plaintiff must allege that the adverse action either chilled his own First Amendment exercise or would chill that of a person of ordinary firmness. Brodheim, 584

F.3d at 1269-1270; Rhodes, 408 F.3d at 568-569.  Thus, plaintiff need not demonstrate

that his First Amendment rights were totally "inhibited or suppressed" because "it would

be unjust to allow a defendant to escape liability for a First Amendment violation merely

because an unusually determined plaintiff persists in his protected activity." Rhodes,

408 F.3d at 568-569 (citing Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283,

1300 (9th Cir. 1999). A plaintiff can establish that an action would silence a person of

ordinary firmness by showing that the action caused harm that was more than minimal.

Watison, 668 F.3d at 1114; Brodheim, 584 F.3d 1262; Rhodes, 408 F.3d at 567, n.11;

see also footnote 2, supra.

With respect to the fifth prong, a prisoner must affirmatively show that "the prison

authorities' retaliatory action did not advance legitimate goals of the correctional

institution or was not tailored narrowly enough to achieve such goals." Rizzo, 778 F.2d

at 532; accord Watison, 668 F.3d at 1114.

### B.    Parties' Arguments

Defendant argues that Plaintiff's retaliation claim against her fails because

(1) there was no causal connection between Plaintiff's grievance and Defendant's

decision to require Plaintiff to take Simvastatin by DOT; and (2) Plaintiff cannot show

the absence of legitimate correctional goals for requiring Plaintiff to take Simvastatin by

DOT.

As to the first contention, Defendant notes that Plaintiff's initial grievance was

filed May 6, the day after she submitted the order for Plaintiff to take the Simvastatin by

DOT. She argues, in effect, the inescapable point that she could not have issued the

order to retaliate against Plaintiff for an action he had not yet taken.  Further, Defendant

asserts she required Plaintiff to take Simvastatin by DOT because he told her at the

1  May 5 visit that he would not take it at all, and she was concerned that his health would
2  suffer if he stopped taking cholesterol medication. Defendant also claims she is entitled
3  to qualified immunity for her actions.
4
5          Much of Plaintiff's argument disputes Defendant's claims and evidence.  He
6  denies that he told Defendant he would not take Simvastatin or that walking out of his
7  appointment with Defendant indicated he was upset.  Instead, he alleges that Defendant
8  accused him of being "narrow-minded" for complaining about the medication change,
9  and that he walked out as "an appropriate way to deal with Loadholt speaking to him
10 this way." (ECF No 67, at 5).  He "calls into question" Loadholt's record of the May 5
11 visit and her May 5 order that Simvastatin be taken by DOT.  He claims that the
12 documents have been tampered with and their dates changed. He bases this claim of
13 falsification of records on the appearance of entries which he feels suggest overwriting,
14 but he does not offer any expertise to support such suspicions or provide evidence of an
15 alternative sequence of dates or events to fit the scenario he alleges. (ECF No. 67 at 8).
16 He submits "that Loadholt is simply wrong, and the evidence she is relying on is
17 ambiguous at best." (ECF No. 67 at 9).
18
19         **C.    Discussion**
20
21         Considering the facts in the light most favorable to Plaintiff, <u>Comite de</u>
22 <u>Jornaleros</u>, 657 F.3d at 942, Defendant has proven an absence of evidence to support
23 Plaintiff's case, <u>Oracle Corp.</u>, 627 F.3d at 387. Accordingly, for the reasons explained
24 further below, the Court will recommend that Defendant's motion for summary judgment
25 be granted.
26
27         Plaintiff alleges that Defendant Loadholt required Plaintiff to take his Simvastatin
28 at the pill window in retaliation for his May 6 grievance criticizing her bedside manner.

Filing a grievance is protected conduct under the First Amendment, and Plaintiff did file a grievance on May 6, 2008.  Assuming that requiring an inmate to take medication by DOT is an adverse action,[3] Plaintiff has failed to show a causal connection between the grievance and the revised medication order.  From the facts the Court finds undisputed, it is not possible for Plaintiff to show any such causal connection.  The grievance was written after Defendant ordered Plaintiff's Simvastatin be taken by DOT.  The order could not have been written "because of" Plaintiff's filing a grievance when that grievance had not yet been filed. See Pratt , 65 F3d at 808 (finding that timing of events led to the conclusion that transfer was *not* motivated by retaliation); see also Brodheim, 584 F.3d at 1271 (protected conduct must be "'substantial' or 'motivating' factor behind the defendant's conduct").

As noted, Plaintiff asserts that the dates on the records Defendant submitted were falsified.  However, a lay witness' mere suspicions about the appearance of lettering do not create a genuine question of fact. "Mere allegation and speculation do not create a factual dispute for purposes of summary judgment." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Nelson v. Pima Community College, 83 F.3d 1075, 1081-1082 (9th Cir. 1996); see also Angle, 673 F.3d 1122, 1134 n.6.

Plaintiff's claim that Defendant "told him for the first time to pick up his medication at the pill window" at his June 2 appointment does not demonstrate that Defendant

---

[3] The Court concluded at the pleading stage that Plaintiff had alleged sufficient facts to satisfy the adverse action element of a retaliation claim. (ECF No. 31). However, as the proceedings have progressed to and through this motion, Plaintiff has not presented evidence to indicate that receiving his medication at the pill window was anything more than a minor inconvenience to him.  The Court finds no evidence that this inconvenience rose to the level of a harm that is "more than minimal" or of a nature as would be expected to chill or silence a person of ordinary firmness from future First Amendment activities. See Watison, 668 F.3d at 1114; Rhodes, 408 F.3d at 567 n.11; Davis, 901 F.Supp. 2d at 1213. It appears Defendant is entitled to summary judgment on this ground as well.

9

changed his prescription to DOT "because of" his May 6 grievance either.  Defendant's

order for Simvastatin to be administered DOT had been in effect since May 5 and was

to stay in effect until August.  Thus, Defendant's verbal notice on June 6 merely

informed Plaintiff of a decision that had been made almost a month earlier and prior to

Plaintiff filing his grievance.  Because Defendant was reiterating a prior order, the timing

does not suggest she acted or spoke with retaliatory intent.

Plaintiff also fails to establish the absence of a correctional justification for

requiring Plaintiff to take his Simvastatin at the pill window.  Plaintiff does not dispute

that "medications are administered by DOT in several instances, including… when a

patient's statements or behavior indicate [he] will not comply with the instructions for

taking medications as prescribed." (ECF No. 67 at 7). He does claim, apparently without

dispute, that he has a right to refuse treatment, and that since Loadholt therefore could

not force him to take the medication, she had no penological interest in requiring him to

come to the window to be observed taking it.  The conclusion does not follow.  Plaintiff's

right to refuse treatment may very well mean Defendant could not ordinarily force him

to take medications;[4] however, she was nonetheless free to encourage compliance with

the course of treatment she had prescribed.  Moreover, nothing prevented Plaintiff from

refusing to take the Simvastatin at the pill window; indeed, he indicates that he did not

actually come to pick up his medication there. (ECF No. 67, at 7).  For these reasons,

the Court finds that Plaintiff's right to refuse treatment does not negate Defendant's

legitimate correctional interest in increasing oversight to try to ensure Plaintiff was

taking his medication as directed.

---

[4] See, e.g., United States v. Loughner, 672 F.3d 731, 745-746 (9th Cir. 2012)(examining Constitutional standards for involuntary medication).

Defendant has proven an absence of evidence to support a retaliation claim against him.

## VI.   CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiff has not met his burden of putting forth sufficient evidence to raise a triable issue of fact.[5] Based on the foregoing, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment (ECF No. 61) be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   February 13, 2015          /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE

---

[5] Because the court resolves Defendant's motion for summary judgment in her favor on other grounds, it does not reach her qualified immunity argument.

11